JOHN POWERS, Respondent, v. CITY OF ST. JOSEPH,
PENN MUTUAL LIFE INSURANCE COMPANY,
and the ST. JOSEPH PUBLISHING COMPANY,
Appellants.

### Kansas City Court of Appeals, December 2, 1901.

1. **Municipal Corporation:** CELLAR STAIRWAY IN SIDEWALK:
CONTINUANCE OF NUISANCE. A cellar stairway projecting three
feet into the sidewalk at right angles to the building, with guard rails
on the sides but none in front and insufficiently lighted to warn per-
sons of danger, is, *per se*, a nuisance and long continuance thereof
can not justify its maintenance or make it lawful.

2. **Negligence:** MUNICIPAL CORPORATION: CONTRIBUTORY
NEGLIGENCE: ORDINARY CARE: INSTRUCTIONS. Ordinary
care is a relative term, and in general, it is such care as is demanded
of an ordinarily prudent and careful person in like situation, and
whether a homeward-bound traveler on a sidewalk who has stopped
in a crowd at night to read bulletins displayed in the window of a
newspaper office was guilty of carelessness in the matter of resuming
his homeward walk, which carelessness was the cause of his falling
into a cellar stairway, is a question for the jury under proper in-
structions, and instructions summarized in the opinion seemed to
have embraced that question and the evidence justified its submission
to the jury. Cases considered.

3. **Municipal Corporation:** SIDEWALK: TRAVELED WAY. There
is no traveled way of a proper sidewalk less than its width, outside
of which a city would be not liable for obstructions, and the traveler
must be safe-guarded in crossing such sidewalk the same as in travel-
ing lengthwise thereon.

4. **Variance:** PLEADING: PROOF: INSTRUCTIONS. The allegations
of the petition in this cause are substantially sustained by the evi-
dence and the instructions are based on both petition and proof; those
given for defendant being practically the same as plaintiff's, though
couched in different form, taken together present the case of the de-
fense fully and properly.

5. **Municipal Corporation:** NEGLIGENCE: INSTRUCTION. Certain
refused instructions are reviewed and held properly refused for the
reason given in the opinion.

6. **Trial Practice: SURPRISE: FALSE SWEARING.** A reason for a new trial, supported by an affidavit that a witness had sworn false as to the shadow of a telephone pole preventing the light from falling on the place of the accident, is insufficient where one of the main issues of fact at the trial was whether such place was sufficiently lighted.

7. **Damages: MEDICAL ATTENDANCE: REASONABLE COMPENSATION.** An instruction failing to use the word "reasonable" in regard to the amount the plaintiff was entitled to recover for medical attendance is held under the facts to be insufficient to require a new trial since the instruction stated that the damage should "reasonably compensate" the plaintiff.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

AFFIRMED.

*Vinton Pike* and *K. B. Randolph* for appellants.

(1) The demurrer to plaintiff's case should have been sustained: (a) Because of his own negligence. Buesching v. Gaslight Co., 73 Mo. 233; Sindlinger v. Kansas City, 126 Mo. 315; Poindexter v. Paper Co., 84 App. 357; King v. Colton Tp., 84 N. W. 1077; Benton v. Philadelphia, 48 At. 267; McLaury v. McGregor, 54 Iowa 717; Fulliam v. Muscatine, 70 Iowa 436; Zelle v. Atlanta, 66 Ga. 195; Messenger v. Denny, 137 Mass. 197; Alline v. LeMars, 71 Ia. 654; Hartman v. Muscatine, 70 Iowa 511; Dwyer v. Railroad, 47 N. J. Law 9; Ramsy v. Eddy, 82 N. W. 127; Bessey v. Newichawanick Co., 46 Atl. 807; Osborne v. Water Co., 95 Va. 16; Casey v. Molden, 163 Mass. 507; 2 Dillon Mun. Corp., sec. 1026; Cohn v. Kansas City, 108 Mo. 392. (b) Because defendants were not negligent. Staples v. Canton, 69 Mo. 592; Young v. Kansas City, 45 Mo. App. 602; Campbell v. Stanberry, 85 Mo. App. 164; Calhoun v. Milan, 64 Mo. App. 402; 2 Dillon Munic. Corp. (4 Ed.), 1019 (quoted 61 Mo. App. 580); Dale v. Webster County, 76 Iowa 370; Day v.

Mt. Pleasant, 70 Iowa 193; Beardsley v. Hartford, 50 Conn. 529; Lansing v. Toolan, 37 Mich. 132; Keys v. Marcellus, 50 Mich. 439; Hubbell v. Yonkers, 104 N. Y. 434; Oliver v. Denver, 57 Pac. 729; 13 Col. App. 345; Dougherty v. Horsheads, 159 N. Y. 154. (2) There is a fatal variance between the allegation and proof, in that, the petition describes an unguarded excavation in the traveled way into which plain-· tiff fell while traveling the street; while the proof shows a stairway at another point outside the traveled way guarded by posts and rails, except at the entrance, and that plaintiff was not a traveler. O'Brien v. Loomis, 43 Mo. App. 37; Harty v. Railroad, 95 Mo. 368; Jacquin v. Cable Co., 57 Mo. App. 331; Price v. Railroad, 72 Mo. 414; Bohn v. Railroad, 106 Mo. 429; Gurley v. Railroad, 93 Mo. 445; Current v. Railroad, 86 Mo. 62; Buffington v. Railroad, 64 Mo. 246; Waldheir v. Railroad, 71 Mo. 514; DeBolt v. Railroad, 123 Mo. 496; O'Brien v. Steel Co., 100 Mo. 182; Calhoun v. Milan, 64 Mo. App. 400; Chitty v. Railroad, 148 Mo. 450; Huston v. Tyler, 140 Mo. 252; Hohan v. Railroad, 150 Mo. 36; Martinowsky v. Hannibal, 35 Mo. App. 78; Little v. Holyoke, 58 N. E. 170; Haynes v. Trenton, 108 Mo. 123. (3) No cause of action is stated. Petition counts upon mere negligence (plaintiff by his proof and instructions sought recovery for a nuisance) and negligence is not predicable of the omission alleged. Conclusions of law, not facts, are stated. 2 Dillon Mun. Corp., sec. 1019; Smith v. Brunswick, 61 Mo. App. 578; Weirs v. Jones County, 86 Ia. 625; Oliver v. Denver, supra; Dougherty v. Horsheads, supra; Staples v. Canton, 69 Mo. 592; Carvin v. St. Louis, 151 Mo. 48; Guffey v. Railroad, 53 Mo. App. 469. It is not even charged that the fall was caused by the defect alleged. (4) The plaintiff's first instruction is erroneous. It authorizes recovery on other grounds than those alleged. Its test of defendant's duty is severer than the law's. Wallis v. Westport, 82 Mo. App. 526; Salmon v. Trenton, 21 Mo. App. 186; Parmenter v. Marion,

85 N. W. 91; 2 Dillon Mun. Corp., secs. 1005, 1015; Stern v. Bensieck, 61 S. W. (Mo.) 595; Norristown v. Moyer, 67 Pa. St. 355; Stickney v. Salem, 3 Allen 377; Sykes v. Pawlett, 43 Vt. 448. Read with No. 2 it is comment; and read with No. 3 it prescribes an improper rule as to contributory negligence. Plummer v. Kansas City, 48 Mo. App. 484; Bradley v. Railroad, 138 Mo. 293; Hill v. Drug Co., 140 Mo. 433; Cohn v. Kansas City, 108 Mo. 392. (5) The instructions taken as a whole are erroneous. Redpath v. Lawrence, 42 Mo. App. 101-112; Gregory v. Sitlington, 54 Mo. App. 65; Welch v. Railroad, 20 Mo. App. 477; McNichols v. Nelson, 45 Mo. App. 454; Brown v. L. & L. Co., 65 Mo. App. 166; Flynn v. Bridge Co., 42 Mo. App. 536; Voegeli v. M. & G. Co., 49 Mo. App. 649; Spillane v. Railroad, 111 Mo. 555; Orscheln v. Scott, 79 App. 541; Linn v. Bridge Co., 78 App. 118; 2 Ell. Gen. Pr., sec. 904. (6) The foregoing also shows that instructions asked by defendants and refused should have been given, B and H especially. Chicago v. Spaar, 91 Ill. App. 472. (7) Objection of defendant city to admission of any evidence should have been sustained. 1 Sher. & Red. Neg., sec. 373; Parsons v. Ft. Worth, 63 S. W. 889; R. S. 1899, sec. 5724. (8) Evidence offered by defendants of existence of other similar stairways should have been admitted. 1 Sher. & Red. Neg., sec. 60b; 2 Dillon Mun. Corp., 1005; Lafflin v. Railroad, 127 N. Y. 136; Brady v. Railroad, 127 N. Y. 46; Golden v. Clinton, 54 Mo. App. 114. (9) The rule given as to damages is erroneous. It allows recovery for sums paid or contracted for medicines and medical attendance, whether reasonable or not. The damages are excessive. Plaintiff speculated with them, before the ink which recorded the verdict was dry. His conduct weighs heavily against the merits of his claim to this large sum. Haynes v. Trenton, 108 Mo. 123. (10) New trial should have been granted because of the perjury of witness Kelly. Rickroad v. Martin, 43 App. 597.

*Thomas F. Ryan* and *Hall & Woodson* for respondent.

(1) The several demurrers to the evidence offered by defendants at the close of plaintiff's case were waived by defendants by reason of their introducing evidence to sustain the issues on their part. Ins. Co. v. Frederick, 58 Fed. Rep. 144; Elliott App. Prac., secs. 685, 686; Railroad v. Hawthorne, 144 U. S. 202; Alexandria v. Stabler, 50 Fed. 689. (2) Defendants, by failing to demur to the evidence at the end of the whole case, admitted that there was not a total failure of proof. James v. Hicks, 76 Mo. App. 108; Alexandria v. Stabler, 50 Fed. Rep. 689; Railroad v. Hawthorne, 144 U. S. 202. (3) The petition sufficiently alleged that notice was given by plaintiff, as required by law. The charter of the city, i. e., the general statutes relating to cities of the second class, required that certain notice should be given to its mayor before it could be held liable for such damages as those sued for herein. (4) Nature of cause of action is alleged in petition. Buckley v. Kansas City, 156 Mo. 16; Whitty v. City of Oshkosh, 81 N. W. 992; Vogelgesang v. St. Louis, 139 Mo. 127. (5) If the areaway rendered Edmond street not reasonably safe for travel by pedestrians, and if plaintiff, while in the exercise of ordinary care, fell into said areaway by reason of said dangerous condition, then he was entitled to a verdict against all defendants. (6) Anything that renders a public street unsafe for use as a street is a nuisance. Wood on Nuisances (3 Ed.), secs. 248, 250, 252, 267, 271, 289, 277, 324, 268; Jones Neg. Mun. Corp., sec. 88-97; Elliott on Roads and Streets (2 Ed.), secs. 645, 650; Bedford v. Woburn, 57 N. E. 1008; Shiften v. Cedartown, 36 S. E. 221; McKissick v. St. Louis, 154 Mo. 588; Buckley v. Kansas City, 156 Mo. 16; City of Henderson v. Reed, 62 S. W. 1039; Culverson v. Maryville, 67 Mo. App. 343; Jegglin v. Roeder, 79 Mo. App. 428; Memphis v. Miller, 78 Mo. App. 67; State v. Campbell, 80 Mo. App. 110; Corby v. Railroad, 150 Mo.

457. (7) The court could not hold as a matter of law that the areaway was reasonably safe. Jones on Neg. of Mun. Cor. sec. 95; Franklin v. Harter, 26 N. E. 882; Jegglin v. Roeder, 79 Mo. App. 434; Redford v. Woburn, 57 N. E. 100. The fact that the shut-off box was the usual contrivance used in cities for the purpose for which it was placed in the sidewalk would not justify the defendant in maintaining it in such a condition as to render the highway defective and unsafe. City of Henderson v. Reed, 62 S. W. 1039; Lombar v. East Yanas, 48 N. W. 947; Kansas City v. Bradbury, 25 Pac. 889; Moon v. Ioma, 46 N. W. 25; Mitchell v. Plattsburg, 33 Mo. App. 555; Goodfellow v. New York, 100 N. Y. 15; Clemence v. Auburn, 66 N. Y. 334; Grossenback v. Milwaukee, 65 Wis. 31; Schroth v. Prescott, 63 Wis. 652; Whitney v. Milwaukee, 57 Wis. 538; Stilling v. Thorp, 54 Wis. 538; Flynn v. Canton, 40 Md. 312; Culverson v. Maryville, 67 Mo. App. 343; Jones on Neg. Mun. Corp., 153; New York v. Sheffield, 4 Hall. 189; Newport v. Miller, 93 Ky. 22; Tilton v. Wenham, 172 Mass. 407; Phelps v. Mankato, 23 Minn. 276; Ward v. Jefferson, 24 Wis. 342; Boltz v. Sullivan, 101 Wis. 608; Kinkley v. Rosendale, 90 Wis. 271; Stricker v. Reedsburg, 101 Wis. 457; Pleasant Grove Tp. v. Ware, 7 Kan. App. 648; 15 Ency. of Law (2 Ed.), 444; Scranton v. Catteron, 94 Pa. St. 202; Michigan City v. Boeckling, 122 Ind. 39; Bigelow v. Weston, 3 Pick. 267; Naylor v. Salt Lake City, 9 Utah 491; Hazard v. Council Bluffs, 87 Iowa 51. (8) The instructions given by the trial court were noticeably and pre-eminently fair.

ELLISON, J.—This action is for personal injuries inflicted upon the plaintiff by reason of his falling down a basement stairway which extended out into the sidewalk. Plaintiff recovered judgment for forty-five hundred dollars, and each of defendants appeal.

The building, into the basement of which the stairway

led, was owned by the defendant insurance company and the lower story and basement were occupied by the defendant publishing company as a tenant for the purpose of printing and publishing a newspaper. Edmond street, into which the stairway extended, was within the limits of and was under the care, control and supervision of the defendant city. Edmond street runs east and west. The stairway was a little more than six feet wide and extended about three feet into the sidewalk. It was guarded on the east and west side by an iron railing, but was unguarded at the top whence it was entered by any one going down into the basement; so that any one traveling east or west on the sidewalk lengthwise of the street, could not step into the opening by reason of the iron guard-rails, but nothing intervened to prevent one from entering upon the stairs from the front, or mouth of the opening.

On the night of the day of the general election in 1898, the defendant publishing company posted bulletins of the election returns in the windows of the building which were immediately over the basement and thereby attracted a large number of the people of the city of St. Joseph who desired to learn the result of the election. These people were massed on the sidewalk around and about the stairway and they extended out into the street to such extent that the police felt it necessary to open the way for street cars to pass along their tracks on the street, and for persons to pass along the sidewalk. While the publishing company was thus posting bulletins from time to time as the returns came in, and while the crowd was upon the sidewalk and street as stated, the plaintiff at about 9 o'clock was traveling east on the sidewalk on his way to his home. He was attracted by the bulletins and stopped a few moments (not exceeding five minutes) in front of or opposite to the opening or stairway and read them. He then started on his way, when, at the moment of turning from his position facing the bulletins and starting, or, as it may be expressed, when in the act of turning and starting on his

way, he stepped into the open stairway and fell to the bottom whereby he was so seriously hurt that no question is made as to the sum allowed him by the verdict. There was no light in the opening, or at the bottom of the stairs, nor was there any danger signal or other thing, to call attention to the opening, save the railing on the sides thereof. There was, however, a light in the windows where the bulletins were posted and there was an electric light suspended in the center of the intersection of Edmond street with Seventh street some seventy feet distant; and from these circumstances defendant sought to show the place was lighted so as to be easily seen and avoided.

The light in the windows was not so situated as to light the stairway, and the light from the electric lamp was so situated that the shadow of an intervening telephone or telegraph pole was cast over the opening; and so was the shadow of the persons standing about. The result was that the stairway and the opening were dark, so dark at the top that one could not see even the first step without looking closely and could not see plaintiff where he lay at the bottom, without striking a match. It was so dark that one or more witnesses, standing near, who saw plaintiff fall, only saw him disappear from sight into the opening. We thus state the situation as to light as the testimony in plaintiff's behalf tends to show it, for, since the verdict in his behalf, we must presume that the jury credited such testimony.

In such state of facts the court gave instructions to the jury in plaintiff's behalf that he had the lawful right to use the sidewalk in the night for the purpose of travel and for the purpose of standing while he read the election bulletins. That it was the duty of the city to keep and maintain the sidewalk in a reasonably safe condition for travel by pedestrians by day or night. On the other hand, the court in behalf of defendants instructed the jury that the city was not an insurer of the safety of persons traveling or using its streets or sidewalks and

that it was not liable for every accident that happened in their use. That such city was only required to use ordinary care to keep its sidewalks in a reasonably safe condition for public travel thereon by persons using reasonable care and precaution in looking out for their own safety. That although the stairway in the sidewalk may have been dangerous, yet if plaintiff, by the exercise of ordinary care, could have avoided the accident, then his failure to do so would prevent his recovery. And that notwithstanding the jury might believe the stairway was dangerous without lights or guards to warn travelers, yet if the manner in which it was lighted or guarded was sufficient to warn persons so by the exercise of ordinary care for their own safety they could avoid the accident the plaintiff could not recover.

This general statement of the ground covered by the instructions makes it clear that the question whether the city was negligent in permitting the stairway to open into the sidewalk without a light or guard of warning sufficient to prevent one traveling thereon, in the exercise of ordinary care, from falling into the opening, was submitted to the jury. We therefore should not interfere with the result unless we can say, as a matter of law, that the construction of a stairway in the sidewalk in the manner the one in question was constructed is not negligence; or, that plaintiff himself was guilty of contributory negligence.

Defendant contends that it is usual and is the practice of cities and of the defendant city to permit basement stairways to extend into the sidewalk with the front thereof left open. Though that should be true, it will afford no excuse for leaving it unguarded or unlighted in the nighttime, when, from its situation, it would otherwise likely injure those using the walk. Long continuation of a nuisance which is liable at any moment to work injury to others engaged in lawful action will not relieve the guilty party of liability. The most that can be made of defendant's contention is that the city

might lawfully permit the use of a portion of the sidewalk space of a street for a descending stairway to cellars and basements. But, like many other purposes, lawful in themselves, it may become a nuisance by the manner of its execution or maintenance. Thus, though it be conceded to be lawful to allow one the license of use of a part of the sidewalk for a stairway, it can not be lawful to license or permit such use in a manner which will destroy or endanger the primary use of the walk. So it was held in Temperance Hall Ass'n v. Giles, 33 N. J. L. 260: "An area opening into a public footway, or so near thereto that a person, lawfully using the way, with ordinary caution, might by accident, fall into it, is, per se, a nuisance; and only ceases to be such when proper means are adopted, either by inclosing it, or maintaining a light to warn persons of danger, to guard against the occurrence of such accidents." The same thing is stated in a different way by Wood on Nuisances, vol. 1, sections 257, 274.

We have therefore only to consider whether plaintiff was in the exercise of ordinary care when he fell into the opening. Ordinary care is a relative term. It is not the same with all persons; nor is it the same with one person in all circumstances. In passing judgment on what is ordinary care, the most important information to seek is the condition, situation and surroundings of the person whose act is under consideration. In other words, that which would show want of ordinary care in one situation might very well be ordinary care in a different situation. One who, in a lawful situation, makes a movement, or takes other action, has demanded of him such care as would be exercised by an ordinarily prudent and careful person *in a like situation*. In this case plaintiff stopped on the sidewalk in the midst of a crowd of people for the purpose of reading the election bulletins. He certainly had the lawful right to do this and was not guilty of imprudence or carelessness in so doing. Whether he was guilty of carelessness in the manner of the act of resuming his walk home-

ward which precipitated him into the opening, was duly submitted to the jury by instructions asked by each party and referred to above. He knew he was on the sidewalk while standing and reading the bulletins. He must have known that his act in turning partly around and taking the step which, in fact, precipitated him down the stairway, was such a movement as would by no means put him beyond the general limits of the walk, whether the movement was towards the building or the street. In such circumstances there could be but two questions presented as to his conduct; these were, should he have looked where he was placing his feet, and if he had looked, would he have seen the dangerous opening in the walk? On this subject the instructions given at the instance of plaintiff and defendant are couched in general language as is shown by the synopsis we have given of them, but undoubtedly they embraced the questions just suggested and they had evidence upon which to predicate them.

It can not be said, as a matter of law, that a failure to look down to the pavement was negligence. It was for the jury to determine. It was held not to be negligence, as a matter of law, in Matthews v. Cedar Rapids, 80 Iowa 459, a case where one attracted by a show window fell into an opening which extended from under the window into the sidewalk and which could have been plainly seen if the plaintiff had looked. And so where a cellar or basement door was in the sidewalk and when closed was flush with it, but when thrown back left an opening in the walk, it was held that the plaintiff was not absolutely bound to keep his eyes constantly fixed on the walk in the search of holes. City of Chicago v. Babcock, 143 Ill. 358. It was likewise held that the fact that the plaintiff in broad daylight walked into an excavation extending across a sidewalk on the principal street of a city, there being no barriers to warn him of the excavation, was not conclusive

proof of negligence. Cantwell v. City of Appleton, 71 Wis, 463.

The case of Buesching v. Gas Co., 73 Mo. 235, was where a stairway descended into a basement on the private ground of the owner abutting on the sidewalk, but did not enter into the sidewalk space. Being thus built, it was dangerous for those who might by misstep get off the walk. Not extending into the walk, it was not so dangerous, nor was the culpability so great as in this case where the opening extended three feet into the walk itself; yet in that case it was held to be negligence in the owner to maintain such stairway unlighted and unguarded, in a suit by the widow of deceased who was killed by falling into the opening at night. And the question of the deceased using ordinary care was held to be for the jury. The case in principle and in some of its facts is like the one before us. There, as here, the deceased was familiar with the locality of the accident, though he also knew of the descending stairway, information the deceased in this case did not have. There, as here, there was a street light at no great distance away. And there, as here, it was urged to be the common practice for the city to permit such stairways. That case was thoroughly considered by the court and the opinion by Judge Hough is an able and a most excellent statement of the law on the questions there involved, many of which are found in this case. We regard it as authority for the position we have taken.

The defendant has made many suggestions to us why the judgment should not be permitted to stand and these suggestions have been amplified in an extended written argument in addition to what was said orally at the hearing. Many of these points are covered by what we have already written. Much as has been said in support of objections to the judgment, and fortified as it has been by numerous citations of authorities, we have only to keep in mind the few plain facts upon which the judgment is founded to see that, after all,

the fact remains that defendant allowed an opening in a side-walk on a public street to be maintained in the nighttime without either a guard at the entrance thereof, a danger signal or a light; and that in consequence of such excavation and invasion of the sidewalk space, plaintiff fell and was seriously hurt. That the step taken by plaintiff which precipitated him into the opening, was taken in ignorance of such opening and in the belief that he was stepping upon the walk and in the execution of his lawful purpose to go to his home. It will not do now to say that though he did not know the stairway was there, that since he knew of the basement, he should have supposed there might be a stairway in the walk. There is no necessary connection between these things. While he, knowing there was a basement to the building, might reasonably suppose there was a stairway, it requires a long stretch of presumption to say that he would think such stairway was located in the public street. But aside from this, the question of his negligence was submitted to the jury.

Much has been said by defendant about what is termed the "traveled way" of the sidewalk. Sometimes the expression is used to denote that portion of the sidewalk that would be used in passing by the guardrails which, as we have seen, were on either side of the opening. In so doing one would walk along the length of the street and at that point would walk parallel with the front or entrance to the opening. Again, it is used to show that the traveled way was lengthwise of the sidewalk and not crosswise; so that if those using the street should always walk lengthwise thereof, they probably, on account of the side rails, would never step into the opening. We think there is no merit in such suggestions. We know of no traveled way of a proper sidewalk less than its width and outside of which the city would not be liable.. It was once so held (Tritz v. Kansas City, 84 Mo. 632), but that case has been three or more times overruled. Roe v. Kansas City, 100 Mo. 190; Walker v. Kansas City, 99 Mo. 647; Goins v. Mo-

berly, 127 Mo. 116. And the idea that one should be safeguarded while traveling lengthwise of a sidewalk but left unprotected while traveling *across* such walk, is without good reason.

Much has been said regarding a variance between the petition and the proof; and as to the instructions not presenting the case stated in the petition. It is not possible, within the reasonable length of an opinion, to follow all that has been said by counsel in this respect. We have, however, given it consideration and are not impressed with the views urged upon us. We do not take issue with much of what is said but we consider it without application to the facts of this case. The petition in this case states a certain state of facts and the evidence in plaintiff's behalf sustains, substantially, the allegations. The instructions are based on both; indeed much of what is said in those given for defendant is practically the same as those given for plaintiff, the only difference being, that those for defendant are couched in different form. We are of the opinion that the instructions given for defendant, taken together, presented the case from the standpoint of the defense fully and properly.

A number of instructions, indicated by letters, were refused for defendant. Most of the propositions contained in them have been disposed of in what we have already said, while some had been stated in those given for defendant. The other propositions were properly rejected by the court. Instruction D, in effect, peremptorily directed the jury to find for defendant if plaintiff stepped into the opening "without looking down to see what was before him." Thus taking from the jury the question of what was ordinary care in plaintiff's situation. Instruction F was also objectionable. It states that plaintiff could not recover if he fell into the opening "by reason of a crowd of people" at that place. The crowd may have been one of the reasons why plaintiff moved in the direction of the opening; or it may have been one of the reasons why he moved at the instant of time that he did; or it may

have been that he could have observed better if there had been no crowd.   It would be going a great way to say that damages could not be recovered for an accident which happened by reason of a crowd of people.   The crowd was one of the conditions, or rather was one phase of the situation in which plaintiff was placed, and it was one of the circumstances from which a conclusion as to reasonable care was to be made up.   Instruction G, in effect, prevented a recovery for the reason that plaintiff was reading bulletins in a crowd of people.   We have already seen that such action was not, per se, a bar to recovery.

One of the grounds alleged for a new trial was supported by affidavit.   It was that one of plaintiff's witnesses falsely stated that the shadow of the telephone pole made by the electric light further on, fell across the opening and thus shut off the light.   Whether the opening was sufficiently lighted or guarded was one of the main matters urged by defendant at the trial. The electric light and the intervening telephone pole were matters of evidence given by each side.   There could not have been a surprise.   Indeed, the light cast upon the opening was the burden of the evidence given in defendant's behalf.   Defendant's complaint in this respect is simply that the jury took plaintiff's version of the facts.   It was not error to refuse the new trial for that ground.

Nor do we see that any substantial error was committed by the court in what was said as to expense of medical attendance in the instruction as to the measure of damages.   McDonald v. Railway, 88 Iowa 345.   It would have been more satisfactory if the word reasonable had preceded the statement that plaintiff was entitled to recover what he had paid or contracted to pay for medical attention.   The only evidence on the subject was of one sum and that such sum was a reasonable charge; there was no dispute as to this branch of the case and the instruction itself was so worded that the jury could not have been misled.   It started out with the statement that

the damages recoverable were such as would "reasonably compensate" the plaintiff.

We have not found any error in the record which we believe to materially affect the merits of the case, and we therefore affirm the judgment. All concur.